THE STATE, EX REL. MYERS ET AL., APPELLEES, *v.* CHIARAMONTE, SUPERINTENDENT, OHIO STATE HIGHWAY PATROL, ET AL., APPELLANTS.

[Cite as State, ex rel. Myers, v. Chiaramonte (1976), 46 Ohio St. 2d 230.]

(No. 75-756—Decided May 19, 1976.)

*Messrs. Tyack, Scott & Colley* and *Mr. Robert W. Suhr*, for appellees.

*Mr. William J. Brown*, attorney general, *Mr. Joseph E. Scuro, Jr.*, *Mr. George Lord* and *Mr. Rodney B. Teague*, for appellants.

CELEBREZZE, J. The primary issue presented by this appeal is whether the provisions of R. C. 124.33 apply to permanent transfers of members of the Ohio State Highway Patrol from one district to another.

At first glance, that issue appears capable of resolution in a relatively straightforward and uncomplicated manner.

R. C. 124.33 is a part of Ohio's Civil Service Act set forth in Chapter 124 of the Revised Code. In this regard, R. C. 124.01 defines, *inter alia*, the following terms:

"(A) 'Civil service' includes all offices and positions of trust or employment in the service of the state * * *.

"(B) 'State service' includes all such offices and positions in the service of the state * * *.

"(C) 'Classified service' means the competitive classified civil service of the state * * *.

"(D) 'Appointing authority' means the officer, commission, board, or body having the power of appointment to, or removal from, positions in any office, department, commission, board or institution.

"* * * *

"(F) 'Employee' means any person holding a position subject to appointment, removal, promotion, or reduction by an appointing officer.

"* * * * "

Pursuant to the provisions of R. C. 124.01, the operation of the state highway patrol, manned by state employees, appears to be subject to the civil service laws of this state, including the provisions of R. C. 124.33.

In the Court of Appeals, the parties stipulated* that appellees "hold positions in the classified service of the state of Ohio." The Court of Appeals, relying in part upon this stipulation, and in part upon R. C. 124.01 and 124.11, held that appellees were classified civil service employees. R. C. 124.11 divides the civil service of the state into the unclassified service and the classified service. R. C. 124.11 (A) enumerates the positions which are in the unclassified service, while R. C. 124.11(B) provides that "[t]he classi-

---

*Appellants have considerably modified their position before this court with regard to whether appellees are classified civil service employees, as stipulated in the Court of Appeals. In both their reply brief and in oral argument in this cause, appellants asserted that appellees are classified civil service employees "solely as an administrative convenience for non-substantive matters" (*i. e.,* for pay grade and record-keeping). Because we do not consider the "stipulation" controlling upon us, see *Allstate Ins. Co.* v. *Boggs* (1971), 27 Ohio St. 2d 216, and because the record in this cause is insufficient to sustain a conclusion, we do not decide whether state highway patrolmen are classified or unclassified civil service employees, or otherwise.

fied service shall comprise all persons in the employ of the state * * * not specifically included in the unclassified service * * *.''

R. C. 124.33 provides, in pertinent part:

''An employee holding a position in the classified service of the state may be temporarily transferred from his original position to a similar position, for a period not to exceed thirty days, or for a longer period not to exceed ninety days if agreed to by the employee and employer.

''* * *

''Any employee who is temporarily transferred from his original position to a similar position in excess of twenty miles from his place of residence shall be reimbursed, by the appointing authority requesting the transfer, for all actual and necessary expenses incurred during such temporary transfer.

''An appointing authority may, with the approval of the director of administrative services, permanently transfer an employee in the classified service of the state from his original position to a similar position in another office, department, or institution. For purposes of this section, a permanent transfer is any transfer in excess of thirty days unless the employee and the employer agree to a longer period not to exceed ninety days. The appointing authority requesting the permanent transfer shall notify the employee and the director in writing of the request to transfer. If the director determines that the transfer is not necessary for the efficient operation of the office, department, or institution, he shall not approve the transfer and shall notify the appointing authority and the employee in writing that the transfer is not approved. If he finds that the transfer is necessary for the efficient operation of the office, department, or institution, he shall notify the appointing authority and the employee involved in the request for transfer, in writing, that the transfer is approved, including in such notification a statement whether the transfer will require a permanent change of residence for the employee.

''* * *

"If the employee does not wish to be transferred or he feels that the director's decision regarding the need for a permanent change of residence has been unfair, he may within ten days after receipt of such notice appeal the transfer to the state personnel board of review, but pending determination of such appeal shall not refuse such transfer.

"In such an appeal the appointing authority of the office, department, or institution receiving the employee shall be required to show that the permanent transfer is necessary for the efficient operation of the office, department, or institution. If the state personnel board of review finds that the transfer is necessary for the efficient operation of the office, department, or institution, and the employee is transferred, the appointing authority of the office, department, or institution receiving the employee shall reimburse such employee for the actual and necessary expenses of moving to his new location and shall pay the employee a per diem allowance not to exceed thirty days for living expenses until his residence can be moved to the new location.

"If the state personnel board of review finds that the transfer is not necessary for the efficient operation of the office, department, or institution, and if the employee has moved to the new location pending his appeal, the appointing authority of the receiving office, department, or institution shall pay the actual and necessary expenses of the employee of moving to the new location and actual and necessary expenses for returning the employee to his previous location."

Salaries of state highway patrol personnel are established by R. C. 124.14 and 124.15.

Appellants have continuously maintained that R. C. Chapter 5503, which provides for the establishment of the state highway patrol and for the appointment and duties of the members thereof, controls disposition of the instant appeal.

R. C. 5503.01 provides, in pertinent part:

"The superintendent, with the approval of the director,

may appoint such number of highway patrolmen and radiomen as are necessary to carry out Sections 5503.01 to 5503.-06, inclusive, of the Revised Code, but patrolmen shall not be less than eight hundred eighty. * * *

"* * *

"The superintendent, with the approval of the director, may appoint necessary clerks, stenographers, and employees."

R. C. 5503.05 provides, in pertinent part:

"The superintendent of the state highway patrol, with the approval of the director of highway safety, may conduct training schools for prospective state highway patrolmen. * * *

"The superintendent may establish rules and regulations governing the qualifications for admission to such schools and provide for competitive examinations to determine the fitness of such students and prospective patrolmen, not inconsistent with the rules and regulations of the civil service commission."

R. C. 5503.02 sets forth in detail the duties and powers of state highway patrolmen.

R. C. 5503.03, upon which appellants rely, provides, in pertinent part:

"The superintendent, with the approval of the director, shall prescribe rules for instruction and discipline, make all administrative rules and regulations, and fix the hours of duty for patrolmen. He shall divide the state into districts and assign members of the patrol to such districts in a manner that he deems proper. *He may transfer members of the patrol from one district to another,* and classify and rank members of the patrol. All promotions to a higher grade shall be made from the next lower grade." (Emphasis added.)

Analysis of the above provisions of R. C. Chapter 5503 and comparison of them with the provisions of R. C. Chapter 124 evidence a lack of legislative guidance as to the status of state highway patrol personnel vis a vis the civil service laws of this state. Only in R. C. 5503.05 and

5503.21 is there any reference at all to the civil service laws of this state set forth in R. C. Chapter 124, and even these two references do not compel the conclusion that the operation of the state highway patrol is totally subject to all aspects of the civil service statutory scheme in Ohio. Moreover, there is no requirement in R. C. 5503.01 that patrolmen or other personnel be appointed from eligible lists compiled as a result of a competitive examination to determine merit and fitness. In fact, R. C. 5503.05 seems to negate any such requirement, and, instead, authorizes the superintendent of the state highway patrol to "establish rules and regulations governing the qualifications for admission" to the patrol training schools and "to provide for competitive examinations to determine the fitness of such students and prospective patrolmen, *not inconsistent* with the rules and regulations of the civil service commission." (Emphasis added.) A strong argument can be advanced, based upon the above quoted language of R. C. 5503.05, that the civil service laws of this state serve only to *guide* the method of selection of the state highway patrol personnel, and are not intended to *control* such process of selection.

In interpreting statutory enactments, the General Assembly has provided this court with certain, specified rules of construction. In this regard, R. C. 1.51 provides: "If a general provision conflicts with a special, or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

As previously indicated in this opinion, the General Assembly has not clearly defined the relationship between the state highway patrol (R. C. Chapter 5503) and the civil service laws (R. C. Chapter 124). There is no express mention or cross-reference to R. C. Chapter 5503 in any of the provisions of R. C. Chapter 124, including R. C. 124.33.

Appellants maintain that R. C. 5503.03 is in irreconcilable conflict with R. C. 124.33. The Court of Appeals rejected this argument, holding that although R. C. 5503.03 does define who is the appointing authority having the power to transfer members of the patrol, it does not purport to define the rights of a member of the patrol with respect to such a transfer, and, therefore, since R. C. 124.33 fills the void in this latter respect, it is not in irreconcilable conflict with R. C. 5503.03, but rather serves only to add procedure to substance.

Although the reasoning of the Court of Appeals below may be technically correct, we are not persuaded by it. Quite the contrary, we construe R. C. 5503.03 and R. C. 124.33 as irreconcilably in conflict.

It is true that R. C. 124.33 adds provisions not contained in R. C. 5503.03, but that observation only begins the process of analysis essential to proper construction of legislation and legislative intent. R. C. 5503.03 expressly states that the superintendent "may transfer members of the patrol from one district to another." Conversely, R. C. 124.33 requires the approval of the Director of Administrative Services prior to effectuation of any transfer of personnel. Additionally, R. C. 124.33 grants to a transferred employee a right of appeal to the state Personnel Board of Review, and, if such an appeal is made, places the burden of proof upon the transferring authority to prove that the subject transfer is necessary for the efficient operation of the department. Had the General Assembly intended to confer upon state highway patrolmen a means of contesting job transfers, it would have been a simple matter to do so. The General Assembly did not choose to expressly confer such rights upon state highway patrolmen, and this court elects not to do so now under the guise of statutory construction. We are limited in our analysis to construction and interpretation of statutes *as written.* See, *First National Bank of Wilmington* v. *Kosydar* (1976), 45 Ohio St. 2d 101, 105, and cases cited therein.

Moreover, the clear and simple language set forth in

R. C. 5503.03 evidences a legislative intention that the power to transfer state highway patrolmen from one duty post to another is reserved to the superintendent of the state highway patrol in the exercise of his discretion. Implicit in the concept of discretion is responsibility for its abuse. Accordingly, a state highway patrolman is not totally without recourse when his place of duty assignment is changed by the superintendent of the patrol.

Pursuant to R. C. 1.51, we construe R. C. Chapter 5503 as specific legislation directly concerned with the creation of the state highway patrol, and the powers and duties of the employees thereof.

On the other hand, we construe R. C. Chapter 124 as general legislation concerned with the overall operation of the civil service system of this state.

It is clear that R. C. 124.33 (which became effective in 1973 with the repeal of R. C. 143.26) was enacted subsequent to R. C. 5503.03 (which became effective in 1953). Therefore, pursuant to R. C. 1.51, R. C. 124.33, the general provision, shall control over R. C. 5503.03, the special provision, only if "the manifest intent is that the general provision [shall] prevail."

We find no such manifest intent to be shown under the circumstances of this case. Subsequent to the enactment of R. C. Chapter 143 (predecessor to R. C. Chapter 124) many sections of the Revised Code were amended to indicate applicability of the civil service laws to those particular statutes. See, e. g., R. C. 4105.03, 4561.021, 5119.07, 5139.02, and 5501.04. No such amendment was made to R. C. 5503.03. Although such inaction by the General Assembly with respect to the applicability of R. C. Chapter 124 to R. C. 5503.03 is not dispositive of the instant appeal, we are persuaded that it is a factor to consider in ascertaining the "manifest intent" of the General Assemby pursuant to R. C. 1.51.

Furthermore, R. C. 5503.02 makes the highway patrol available to aid law enforcement officials in the various communities of this state "in the event of riot, civil dis-

order or insurrection, or reasonable threat thereof." It is apparent, then, that the duties of the state highway patrol are similar to that of a military unit in at least the above respect. As with any military unit, discipline and the necessity for patrolmen to respond immediately and affirmatively to orders of superior officers is essential to the maintenance of the patrol as an effective law enforcement organization. Subjection of the superintendent's transfer powers pursuant to R. C. 5503.03 to the provisions of R. C. 124.33 might adversely affect the ability of the highway patrol to respond to emergency situations, as well as create a disciplinary problem.

For the foregoing reasons, we conclude that appellees have failed to demonstrate a clear legal duty upon appellants to comply with the requirements of R. C. 124.33. In the absence of such a showing, mandamus will not lie. *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, paragraph ten of the syllabus. The judgment of Court of Appeals is, therefore, reversed.

*Judgment reversed and writ denied.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.